UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIO L. CASTILLO, II,

      Plaintiff,

v.

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

Case No. 1:04-CV-707

Hon. Richard Alan Enslen

**OPINION**

    This matter is before the Court on Plaintiff Julio R. Castillo, II's Objection to United States Magistrate Judge Ellen S. Carmody's Report and Recommendation of December 9, 2005 ("Report"), which recommended affirming the Commissioner's denial of Social Security disability benefits. The Commissioner has not responded to Plaintiff's Objections. The Court reviews the Report and Recommendation pursuant to 42 U.S.C. § 405(g), to determine whether the decision of the Commissioner is supported by substantial evidence and is otherwise in accordance with the law. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986).

    The Commissioner, through her Administrative Law Judge ("ALJ"), found that Plaintiff suffered from multiple impairments, namely: (1) status post acute myocardial infarction; (2) status post quintuple aortocoronary bypass grafts; (3) coronary artery disease; (4) depression; and (5) non-insulin dependent diabetes. The ALJ ultimately concluded that Plaintiff's impairments, whether considered alone or in concert, failed to satisfy the requirements of any of the listed impairments in Title 20 of the Code of Federal Regulations, Chapter III, Part 404, Subpart P, Appendix 1. Consequently, the ALJ found Plaintiff was not disabled within the meaning of the Social Security

Act because he could perform a significant number of jobs despite his limitations. Plaintiff's Objections articulate two points of error.

**I.      REASON GIVING WHEN NOT ACCORDING A TREATING PHYSICIAN'S OPINION CONTROLLING WEIGHT**

Plaintiff's first objection assigns error to the Report's failure to consider the two-step process, purportedly found in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004), when a treating physician's opinion is not accorded controlling weight. For this objection the Court understands Plaintiff's argument to be: (1) the ALJ must first determine whether to give Plaintiff's treating physician's opinion controlling weight; (2) and if the ALJ does not accord the treating physician's opinion controlling weight, then the ALJ must look to 20 C.F.R. § 404.1527(d)(2) and articulate his rational, specifically using the six factors outlined in the cited regulation.[1]

In his decision, the ALJ did not accord Plaintiff's treating physician's (Dr. Pankaj Jandwani) opinion controlling weight. The ALJ did not explicitly employ all six factors in the regulatory framework of section 1527(d)(2). However, the Court disagrees that section 1527(d)(2) requires the ALJ to march through all six factors one-by-one when he wishes to disregard a treating physician's opinion.[2]

---

[1] Those factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the treating physician's opinion's evidentiary support; (4) his opinion's consistency with the record; (5) his medical speciality; and (6) other factors supporting or contradicting his opinion. 20 C.F.R. § 404.1527(d)(2)(i), (d)(2)(ii) & (d)(3) – (d)(6).

[2] Plaintiff's counsel served as appellate counsel in *Wilson* and has made this argument in this Court before. In fact, Plaintiff's counsel has endeavored to teach the Court what he calls "Treating Source Rule 101 is a Two Step Analysis." (Pl.s Obj.'s at 1). It is hoped this Opinion will deter future appeals premised on this theory.

In *Wilson*, the Sixth Circuit Court of Appeals held that ALJs are required to supply a "good reason" when not according a treating physician's opinion controlling weight. *Wilson*, 378 F.3d at 545. The *Wilson* court noted the procedural import because the regulations contain a clear requirement on ALJs: "'We will always give good reasons in our notice of determination or decision for weight we give [the claimant's] treating source's opinion.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)). The purpose of the procedural safeguard of reason giving is:

> [T]o let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."

*Id.* at 545. (citations omitted). The *Wilson* court ultimately determined that the ALJ violated section 1527(d)(2) because he did not articulate a good reason for not according the plaintiff's treating physician's controlling weight.

In *Wilson,* the ALJ "stated in his ruling that he had 'considered' [the plaintiff's physician's] opinion, but concluded that while 'this opinion may be an accurate assessment of [the plaintiff's] current limitations, the undersigned must assess the claimant's limitations on March 31, 1995, the date he was last insured for benefits." *Id.* at 545. Therefore, the precise holding in *Wilson* reads: the ALJ's finding that the treating physician's "opinion 'may be an accurate assessment,' followed by a bald statement of the issue the ALJ must ultimately resolve, can hardly amount to 'giving good reasons' for rejecting [the treating physician's opinion]." *Id.*

Conspicuously absent from the *Wilson* court's difficulties with the ALJ's disposition of the treating physcian's opinion is any mention of the six factor analysis Plaintiff suggests he must employ. The Court believes all that *Wilson* requires of the ALJ is to give a good reason and he

should look to sections 1527(d)(2)(i), (d)(2)(ii), and (d)(3) – (d)(6), to do so. As long the ALJ draws a good reason from those sections, he has complied with section 1527(d)(2) and the mandate of *Wilson*.[3]

Turning to the ALJ's decision in this case. The ALJ found that Dr. Jandwani's opinion was not supported by record evidence. *See* 20 C.F.R. § 404.1527(d)(3). Specifically, the ALJ found Jandwani's opinion was contradictory because he opined Plaintiff could not sustain any full time work but:

> [N]owhere in [Jandwani's] records or the treating cardiologist's notes is there any stated requirement that the claimant lie down during the day or significantly limit his activities. To the contrary, the claimant was enrolled in Cardiac Rehabilitation shortly after his bypass surgery and encouraged to continue exercising at home after therapy ended. As recently as April 17, 2003, Dr. Mohan's progress note states that the claimant denied fatigue.

(ALJ's Decision at 6). Plaintiff's testimony regarding his lifting restriction also contradicted Jandwani's opinion. The ALJ gave Plaintiff a good reason for not according Jandwani's opinion controlling weight: it was not supported by record evidence. 20 C.F.R. § 404.1527(d)(3). *Wilson* requires no more and Plaintiff's objection on this ground will be denied.

---

[3] The Court recognizes that section 1527(d)(2) technically reads as "giving good reasons" in the plural. Even so, requiring an ALJ to cite two reasons when one is sufficient is unnecessary. It is enough that the ALJ express one good reason to the claimant, which comports with the spirit of *Wilson*. *Id.* at 545 (reason giving affords the bewildered claimant a way to make sense of an agency's decision that he is not disabled when his physician has told him he is). Surely there will be situations when multiple section 1527(d)(2) factors justify neglecting a claimant's treating physician's opinion. In those situations, it is hoped more factors will be articulated. But when one factor will suffice, this Court will not require more.

II.     **PLAINTIFF'S MENTAL CAPACITY AND THE ALJ'S HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT**

The Commissioner's evaluation of disability claims is a five-step process. 20 C.F.R. § 404.1520. If the Commissioner reaches the fifth step, it has been established that the claimant is limited by impairments, cannot perform past relevant work, and it will be determined if the claimant can perform other work. *Id.* The Commissioner bears the burden of proving that other work is available and that the claimant can perform such vocations. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To satisfy her burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical question, but only if the question accurately portrayed [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff's second objection surmises that the ALJ's hypothetical question posed to the vocational expert was inaccurate because it did not explicitly list his depression. For this principle, Plaintiff relies chiefly on *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002) and that court's contention that the ALJ should have included a listing of the claimant's medical conditions in the hypothetical questions posed to the vocational expert. *Id.* at 241. While the *Howard* court used language ostensibly supporting Plaintiff's objection, the Court cannot sustain the objection, since according to *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 (6th Cir. 2004), *Howard* does not require what Plaintiff suggests.

Indeed, the *Webb* court's discussion of this issue is complete, dispositive of Plaintiff's objection, and warrants substantial recital.

> A firmly established rule in this circuit prevents a panel of the court from issuing an opinion overruling a decision of another panel. Were *Howard* to be interpreted to require hypothetical questions to vocational experts to include lists of claimant's medical conditions, it would contravene the holdings of earlier cases of this circuit. In *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. *Foster*, 279 F.3d at 356. In *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777 (6th Cir. 1987), a case cited in *Howard*, we likewise determined that a vocational expert need only "take[ ] into account plaintiff's limitations." *Varley*, 820 F.2d at 780. Except for *Howard*, [the plaintiff] can cite no case requiring that a hypothetical question include a listing of medical conditions. Consequently, because such an interpretation would conflict with this circuit's precedent, we cannot read *Howard* to create an entirely new requirement for hypothetical questions to vocational experts.
>
> Moreover, an interpretation of *Howard* that would require vocational experts to evaluate the effect of medical conditions would be inconsistent with the purpose that vocational experts serve under social security regulations. Under those regulations, the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an "assessment of [her] residual functional capacity." 20 C.F.R. § 416.920(a)(4)(iv). The vocational expert testifies on the basis of a claimant's "residual functional capacity and . . . age, education, and work experience" and assesses whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v). The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she "can and cannot do," there exist a significant number of employment opportunities for her in the regional and national economies. The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination. Indeed, vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise. Accordingly, in light of the facts present in *Howard*, this circuit's prior case law, and the role of a vocational expert under the social security regulations, we do not read *Howard* to hold that hypothetical questions to vocational experts are required to include lists of claimants' medical conditions.

*Webb*, 368 F.3d at 633. In this case, the ALJ asked the vocational expert given Plaintiff's age, education, vocational experience, and residual functional capacity (the ALJ's determination of what

Plaintiff can and cannot do) whether a significant number of jobs existed that Plaintiff could perform. The vocational expert responded in the affirmative and the ALJ found Plaintiff was not disabled since he could perform a significant number of jobs despite his limitations. In light of *Webb*, the Court finds the ALJ has sustained he burden by substantial evidence. Accordingly, the Court will deny Plaintiff' second objection.[4]

### III.   CONCLUSION

Since the Commissioner's decision is supported by substantial evidence and is otherwise in accordance with the law the Court will deny Plaintiff's Objections to United States Magistrate Judge Ellen S. Carmody's Report and Recommendation. The Commissioner's decision to deny disability benefits is affirmed. A Judgment consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>       February 21, 2006 |  /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[4] Plaintiff is incorrect to the extent he argues that the ALJ did not consider his depression when formulating Plaintiff's residual functional capacity. (*See* ALJ Decision at 5).